UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

UNITED STATES OF AMERICA,             :      11 Cr. 896 (PGG)

             -v-                      :

JOHN VALLEJO,                         :

                  Defendant.          :

----------------------------------X

SENTENCING MEMORANDUM FOR MR. JOHN VALLEJO

                         DAVID E. PATTON
                         Federal Defenders of New York, Inc.
                         Attorney for Defendant
                          John Vallejo
                         52 Duane Street, 10th Floor
                         New York, New York 10007
                         Tel.: (212) 417-8713

SABRINA P. SHROFF,
  Of Counsel

TO:  PREET BHARARA, ESQ.
     United States Attorney
     Southern District of New York
     One St. Andrew's Plaza
     New York, New York 10007

     Attn.:  PARVIN MOYNE, ESQ.
             Assistant United States Attorney

# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

May 20, 2013

Hon. Paul G. Gardephe
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:  **United States v. John Vallejo**
     **11 Cr. 869 (PGG)**

The Hon. Judge Gardephe:

John Vallejo is scheduled to be sentenced by the Court on May
31, 2013 following his plea of guilty to one count of conspiracy
to commit Hobbs Act Robbery in violation of Title 18, U.S.C. § 1951
(c). The sentencing guideline range for Mr. Vallejo's offense is 46-57
months, based on an Adjusted Offense Level of 23 and a Criminal
History Category of I.

John Vallejo is a 23 year old citizen of the United States of
America who is the youngest of four siblings. John Vallejo was raised
by his parents Gaspar Vallejo and Ofelia Mendoza who "spoilt" him.
PSR ¶ 49. Ironically, the very parents who indulged their youngest
child also involved him in this very serious offense – conspiracy
to commit a robbery. As discussed in greater detail below, Gaspar
Vallejo Sr., wanted his son to follow in his footsteps, and gave his
son his first job as a mechanic in his auto body shop and his second
job – participating in a criminal conspiracy.

Although John Vallejo must be punished for the decisions he
made, he also needs mental health services and very close monitoring
to ensure that he complies with the help that the Department of
Probation will be able to give him upon his release from prison. A
just and rational sentence for Mr. Vallejo would be a term of 24 months
coupled with a lengthy period of supervised release that includes

Hon. Paul G. Gardephe                          April 20, 2013
United States District Judge                    Page 2
Southern District of New York

Re: **United States v. Vallejo**
    **11 Cr. 869-03 (PGG)**

strict requirements to participate in supervised mental health
counseling with a focus on anger management.

### Statement of Facts

### Personal History

John Vallejo was born in Bronx, New York in 1989 to Gaspar Vallejo
and Ofelia Mendoza. Shortly after John was born, his mother's
relationship with John's father began to deteriorate and eventually
ended. It remains unclear why the relationship ended but Ms. Mendoza
became upset by this development and found herself overcompensating
by spoiling her children. A young mother, she fretted over the
separation and worried that her boys would choose their father over
her. Accordingly, when John was a teenager, he had little discipline
and structure.

As a young boy, John Vallejo lived with his mother until her
diabetes resulted in complications which affected her daily life. Her
acute diabetes left her legs and feet swollen and in pain. Ofelia could
not care for her children, especially her active youngest son. John
was sent to live with his father, Gaspar Vallejo Sr., who was simply
not a positive influence for any of his children. Unfortunately, he
was a strong influence on the choices his children made as adults.
According to the PSR and there is no dispute about this fact from the
government, John was influenced by his father. My father taught me
how to be a "man." PSR ¶ 50.

Ofelia Mendoza, now 43, is on disability. She is unable to work
due to her poor health, and has long depended on her son for both
financial and daily support. Ms. Mendoza lives in a lower middle-class
neighborhood in the Bronx.  She is a caring person who, by all
accounts, did the best she could to provide her children with a good
upbringing. Unfortunately, because she could not finish raising her
children, as a teenager, John was influenced by his father and his
values.

Based on counsel's observations, Mr. Vallejo is easily
influenced, and very malleable. From the moment John Vallejo went to
live with his father, he was guided by his father in the choices he
was given and the choices he made in his life. PSR ¶ 60. It comes as

Hon. Paul G. Gardephe                         April 20, 2013
United States District Judge                  Page 3
Southern District of New York

Re:  **United States v. Vallejo**
     **11 Cr. 869-03 (PGG)**

no surprise to anyone that the son who worked in his father's mechanic shop, also, at his father's asking, did what his father asked of him and agreed to participate in this illegal and dangerous conspiracy to rob a drug dealer.

**The Offense Conduct**

From the time he was a teenager, John Vallejo worked for either his father or his uncle. PSR ¶¶ 59-62. To accommodate his mother's health and her medical needs, John Vallejo worked at jobs that allowed him to spend time with his mother. PSR ¶ 61. As a teenager and then as a young man he worked in his father's mechanic shop – Vallejo Auto Repair. A good employee, he was a supervisor at Hunts Point Auto Glass for over a year, a job he left to return to work at his father's mechanic shop. John Vallejo, of course, was easily influenced by his father and older brother both of who have a long criminal history.

In August of 2011, John Vallejo was working as a mechanic in his father's mechanic shop. Before long, John's father (Gasper Vallejo Sr.) and his uncle (Julio Vallejo) had a different job for him. They had hatched a plan to rob a group of drug dealers of their cocaine.

As this Court has noted, this was a "sting operation." There were no drugs and no drug dealers to rob. Sentencing Transcript of Gaspar Vallejo Sr., attached as Exhibit B. During August and September of 2011, Julio and Gaspar Sr. had been planning a robbery with an undercover police officer who was posing as a disgruntled worker for a narcotics trafficking organization and as someone who was interested in robbing his boss. Julio Vallejo, who was then incarcerated at FCI, Fort Dix, put the undercover in touch with his uncle, Gaspar Vallejo Sr., who in turn recruited his two sons, John and Gaspar Jr. into another trade – robbing drug dealers.

There is no doubt, and this Court has noted, that the planner and executioner of this scheme was Gaspar Vallejo Sr.:

As to culpability, it is my conclusion that the defendant [Gaspar Vallejo Sr. is the most culpable of the defendants charged in the case. It was the defendant [Gaspar Sr.] who followed up on his brother's request to put a team together to commit the

Hon. Paul G. Gardephe                          April 20, 2013
United States District Judge                   Page 4
Southern District of New York

Re:  **United States v. Vallejo**
     **11 Cr. 869-03 (PGG)**

    robbery; it was the defendant who conducted the bulk of the
preliminary discussions with the undercover officer; and it
appears to have been the defendant who enlisted two of his sons,
as well as other men, to commit the robbery, although he chose
not to go himself on the day of the purported robbery.

Exhibit B at page 23.

    Recruited by his father, John Vallejo himself, a father to two
young children, joined up with the rest of his family to participate
in this sting robbery. On September 19, 2012, only a small portion
of the Vallejo family showed up to rob a drug dealer of his cocaine.
Gaspar Sr. chose not to show up for the robbery itself, and instead
let his son do the truly dangerous work – get guns and show up for
the robbery. Two others were recruited in Gaspar Sr. and Gaspar Jr's
stead. The police were prepared for their arrival but unprepared for
Gaspar Sr.'s absence. After a brief conversation, and an accommodation
of the changed plans, John Vallejo, and others set out to commit the
robbery and were arrested.

    During the arrest process, John Vallejo who was the driver of
the car, tried to flee. In a moment of pure panic, he accelerated and
tried to get away. He failed. In the process, he could have, but did
not, injure law enforcement. John Vallejo was shot by police officers,
arrested and taken to the hospital for medical treatment.

**Post-Arrest Conduct**

    Mr. John Vallejo has been detained at the Metropolitan Detention
Center ("MDC") since his arrest in September of 2011. His time in jail
has been marked by the persistent belief that other inmates are seeking
to harm him, and was in fact in a fight with another inmate at the
MDC. The Court should not draw a negative conclusion about Mr. Vallejo
and his character from this incident, which occurred in a pre-trial
detention facility. It does appear that Mr. Vallejo has some
unresolved anger management issues, and those are best addressed
through counseling and supervised release. A longer period of
incarceration is not going to provide him with the type of intervention
and help he needs.

Hon. Paul G. Gardephe                    April 20, 2013
United States District Judge             Page 5
Southern District of New York

Re:  **United States v. Vallejo**
     **11 Cr. 869-03 (PGG)**

**Letters of Support**

   Mr. Vallejo's mother, Ofelia Mendoza; his sister, Marlin Cruz;
his step-son Jacob Brito, have all written letters of support for John.
These letters convey a common theme: John is a good person who has
always been kind and supportive of his mother's need. As she notes
in her letter, John was a very good son to her. "Every day in the
afternoons he passes by my house to see how I am doing or if I need
anything. Before he was in jail, when I would get sick he would take
me to the hospital, he buys me my medicine.  He would give money, very
little but it would help a lot." Letter from Ofelia Mendoza, Exhibit
A.
   John was an equally responsible father to the three children he
was helping raise.  All of his relatives and friends recognize his
deep commitment to his family that his first offense was one he did
not seek out but was introduced to him by his father. See, Exhibit
C. Particularly noteworthy is the letters from the young Jacob Brito
(10 years old) and Erica Rivera, who is 15 years old. Both speak to
how John Vallejo befriended his now girlfriend Gloria Ortiz, helped
her get out of an abusive relationship, and made sure that her children
were safe during the time she was healing. John Vallejo is father to
three children, including his step-son, Jacob. John supported them
all - financially and emotionally.

**Sentencing Guideline Range**

   The sentencing guideline range for the offense is 46-57 months
based on a Criminal History Category of I and an Adjusted Offense Level
of 22. PSR, ¶¶ 32-42, 68. These calculations are consistent with the
plea agreement and are not disputed.

   The Probation Office recommends a sentence of 57 months,
primarily because Mr. Vallejo "attempted to drive away from the scene"
and because that action by Mr. Vallejo was motivated by "the
anticipated monetary gain and to avoid arrest." PSR page 17. Because
John Vallejo did not seek out this robbery, has no prior criminal
history, and has strong community ties, we believe that a sentence
of 24 months is appropriate and no greater than necessary to address
the sentencing objectives of general deterrence and punishment.

Hon. Paul G. Gardephe                    April 20, 2013
United States District Judge             Page 6
Southern District of New York

Re:  **United States v. Vallejo**
     **11 Cr. 869-03 (PGG)**


     There is a simple explanation for Mr. Vallejo's flight; he was
scared and panicked by the events as they unfolded. A knee jerk
acceleration of the gas pedal is a quintessential act of panic. It
is not a thinking act. It was not an act undertaken with malice or
with an intent to harm another, and therefore not a proper basis to
enhance an individual's sentence.

     The Court should ignore Probation's comment (page 17 of the PSR)
that Mr. Vallejo sought to "endanger" the lives of law enforcement.
There is nothing in the evidentiary record that supports such a
statement by the probation officer. Nor is the government (who has
the best access to these facts) supporting probation's position. To
the contrary, the government recognizes that Mr. Vallejo was in a state
of pure panic and tried to get away. The government is not arguing
that Mr. Vallejo attempted to harm or took steps that were specifically
designed to harm law enforcement. There was never any intent to hurt
another, and the government concurs with us.

                              **Argument**

     This is a hard case, but it is not a complicated one. John Vallejo
is very much a product of, and a reflection of his environment and
his upbringing. The robbery he was about to commit is totally at odds
with his character, and not an offense he sought out. Rather, the
robbery is a direct result of being recruited by his father whom he
loved and trusted.

     The above propositions are not open to serious dispute. The
government and probation are unanimous in their conclusion that this
sting robbery started with Julio Vallejo and was directed by Gaspar
Vallejo Sr. And, of course, the observations of those closest to him
confirm that prior to this conduct, John Vallejo had worked his entire
life. John Vallejo started working when he was 17 years old and has
worked ever since. PSR ¶¶ 60-62. Mr. Vallejo's work history is
interesting in the story it tells – each time John Vallejo had a good
job outside of his father's garage, he left it to return to work for
his father. To elucidate, from 2009 to 2010, John had a good job working
for Hunts Point Auto Glass. He was a supervisor and was doing well.
Instead of continuing with the company, John left that job to go work
for his father. PSR ¶ 62.

Hon. Paul G. Gardephe                April 20, 2013
United States District Judge         Page 8
Southern District of New York

Re:  **United States v. Vallejo**
     **11 Cr. 869-03 (PGG)**

the basis for added punishment. His actions were not premeditated and were not taken with the intent to harm another.

     At the end of the day, the Court is primarily left with the question as to whether how much prison time is necessary and whether a longer period in jail or release on strict conditions of supervised release are more likely to benefit the defendant who is a citizen of the United States and his community.

     For the above reasons, the answer is the latter.


                              Respectfully submitted,

                              /SS/

                              Sabrina P. Shroff
                              Attorney for John Vallejo


cc: A.U.S.A. Parvin Moyne

Hon. Paul G. Gardephe                    April 20, 2013
United States District Judge             Page 7
Southern District of New York

Re:  **United States v. Vallejo**
     **11 Cr. 869-03 (PGG)**

     Without his father, and left to his own devices, John Vallejo
may never have been involved in this conspiracy. There isn't any real
doubt that the crime of conviction is the direct product of Mr. Gaspar
Sr.'s greed and misjudgment. It is patently apparent that but for his
father, John Vallejo would not have been part of this offense conduct.

     The hard part of sentencing is to fashion a punishment that takes
into account both Mr. John Vallejo's vulnerability and the crime he
committed. We are mindful that the Court has to consider the safety
of the community as well as the need for John Vallejo to receive help
when fashioning a sentence. Resolving this issue requires the Court
to balance two competing concerns.

     On the one hand, as amply demonstrated above, John Vallejo is
in need of sustained and intensive reform. The Bureau of Prisons is
simply not very well-situated to provide such reformation through
counseling or therapy. Prisons focus on security and control. As
demonstrated by Mr. Vallejo's experience at the MDC over the past year,
prisoners are unlikely to receive any type of training or therapy that
helps them address their issues. On the other hand, it is equally clear
that John Vallejo must be punished for the decisions he made as a 23
year old adult to join his father in this conspiracy. Given these
factors, the best way to both protect the community and to John Vallejo
is to impose a sentence of 24 months followed with intensive conditions
of supervised release focused on counseling.

     Sentencing someone like John Vallejo is not a simple task. Many
of the factors enumerated in Title 18, U.S.C. § 3553(a) are of little
use in arriving at an appropriate sentence. Notions of deterrence,
either general or specific, or punishment or promoting respect for
the law have scant relevance to someone who has acted out of powerful
but irrational fealty towards their father. On the one hand, John
Vallejo did not seek out this (or any other) crime. But for his
half-cousin and his father, John would still be working as a mechanic,
supporting his family and helping his mother. On the other hand, John
Vallejo could have, and should have, stood up to his father and simply
refused to participate in his hair-brained but dangerous scheme to
rob a drug dealer. Similarly, instead of panicking and trying to run
from law enforcement, John should have surrendered to their authority.
On the other hand, his impulsive and panicked reaction should not be